UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM SHARPE,<br><br>             Plaintiff,<br><br>        v.<br><br>C. CRYER, et al.,<br><br>             Defendants. | No. 1:19-cv-00711-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S CLAIMS AGAINST DEFENDANT SMITH BE DISMISSED WITHOUT PREJUDICE BECAUSE PLAINTIFF FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES<br><br>(ECF No. 50)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Adam Sharpe ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's complaint (ECF No. 1), which he filed on May 21, 2019, against Defendant C. Cryer, J. Lewis and S. Gates for deliberate indifference to a serious medical condition in violation of the Eighth Amendment and against Defendant S. Smith for failure to protect in violation of the Eighth Amendment. (ECF No. 33).

On December 24, 2020, Defendants filed a motion for summary judgment as to Defendant Smith only on the grounds that Plaintiff failed to exhaust his administrative remedies against Defendant Smith. (ECF No. 50). Plaintiff filed an opposition to the motion on March 4, 2021,

1

and Defendants filed a reply brief on March 12, 2021. (ECF Nos. 57 & 58). On March 31, 2021, the Court ordered Defendants to provide additional information concerning Plaintiffs' use of administrative remedies. (ECF No. 61). Defendants filed such information on April 7, 2021. (ECF No. 62).

For the reasons that follow, the Court recommends granting Defendants' motion and dismissing Defendant Smith without prejudice because Plaintiff failed to exhaust available administrative remedies.

## I.    LEGAL STANDARDS

### A.    Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." *Anderson*, 477 U.S. at 255.

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* However, "the ultimate burden of proof remains with the defendant." *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

**B.     Legal Standards for Exhaustion of Administrative Remedies**

At the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)). *See also* Cal. Code Regs.

tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *accord Ross v. Blake*, 136 S.Ct. 1850, 1857, 1859 (2016).

"Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Reyes*, 810 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

As discussed in *Ross*, 136 S.Ct. at 1862, there are no "special circumstances" exceptions to the exhaustion requirement. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 1856. The *Ross* Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers

4

> unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819….
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use….
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation…. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 1859–60.

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

## II.     SUMMARY OF RELEVANT PORTIONS OF COMPLAINT

Plaintiff's verified complaint (ECF No. 1) alleges as follows:

Plaintiff suffers from Keratoconus, an eye disease that deteriorates vision. For this, Plaintiff has been prescribed SynergEyes Hybrid Contact Lenses. Without the contact lenses, Plaintiff's natural vision is 20/200 in the left eye and 20/400 in the right eye. The lenses are to be replaced every 6 months. Plaintiff received lenses on October 4, 2016 at Kern Valley State Prison. Plaintiff was then transferred to Substance Abuse Treatment Facility ("SATF") in December of 2016. Plaintiff let SATF medical know that Plaintiff's lenses would need to be replaced.

On April 27, 2017, Plaintiff was told he would be referred to see an ophthalmologist. Plaintiff did not see this ophthalmologist.

Plaintiff filed two healthcare appeals concerning his need for vision care: SATF HC-17065076 and SATF HC-18001512. Plaintiff's attachments show both appeals were exhausted to the highest level. Although one was partially granted, neither resulted in him receiving the necessary care. The responses to Plaintiff's appeals were signed by Defendants C. Cryer, S. Lewis, and S. Gates. (*Id.* at 6-8, 14-17, 29). Plaintiff did not allege Defendant Smith was involved in those requests.

Plaintiff filed a reasonable accommodation request, seeking a single cell due to his poor vision. This request was denied on October 25, 2017.

On January 24, 2019, Plaintiff, who still had not received his contact lenses, was assaulted by a cell mate.  He received multiple injuries and was escorted off the prison grounds in an emergency response vehicle.

On April 1, 2019, Plaintiff filed another reasonable accommodation request, again seeking a single cell because "I cannot see well enough when in my cell to defend myself from attack." (*Id.* at 24). Defendant Smith denied this request, at least in part, because Plaintiff was "issued special hard contact lenses to help keep [his] vision in proper focus." (*Id.* at 25). However, Plaintiff had not received his hard contact lenses. (*Id.* at 4). Plaintiff did not file any attachments indicating this request had been exhausted to the highest level.

### III.     CLAIMS FOUND COGNIZABLE

The Court entered a screening order on November 7, 2019. (ECF No. 11). Based on the complaint's allegations, the Court found Plaintiff stated a claim against Defendant Smith for failure to protect in violation of the Eighth Amendment. In its screening order, the Court stated:

> The Court will allow Plaintiff's claim to proceed past the screening stage for a failure to protect in violation of the Eighth Amendment as to S. Smith, the ADA Coordinator/Designee.  The Court is not making a determination that Plaintiff will be able to satisfy all the elements of a failure to protect claim.  But, given that S. Smith's reasons for denying single cell status were based in part on Plaintiff having hard contact lenses, and Plaintiff has pled that he was not in fact given those hard contact lenses, the Court finds that Plaintiff's claim contains sufficient allegations against S. Smith to proceed past screening at this time.  The Court does not find sufficient facts to proceed for this claim against any other defendant because Plaintiff does not plead sufficient facts that any other defendant was aware of the risk to his safety yet was deliberately indifferent.

(*Id.* at 8-9).

The Court also found that other Defendants—Cryer, Lewis, and Gates—were deliberately indifferent to Plaintiff's serious medical needs because they did not provide him with contact lenses despite a serious medical need. (*Id.* at 7-8). The Court found that the complaint did not state a deliberate-indifference claim against Defendant Smith because Plaintiff did not allege Defendant Smith was involved in the denial of his request for prescription eyewear.

6

After Plaintiff filed a notice to proceed only on the cognizable claims, (ECF No. 12), the Court entered findings and recommendations to proceed only on such claims, (ECF No. 14), which were adopted by the district judge, (ECF No. 33).

### IV. SUMMARY OF ARGUMENTS

Defendants move for summary judgment on the ground of exhaustion as to Defendant Smith, but not as to the other Defendants.

Defendants argue that Plaintiff filed only one non-medical appeal to his institution of confinement, California Substance Abuse and Treatment Facility ("SATF") between the date he states he was attacked (January 24, 2019) and the date he filed his complaint (May 21, 2019), and that he did not exhaust that appeal. (ECF No. 50-2 at 3-4 & 7). They argue that this filing was untimely and not exhausted. (*Id.* at 7). In addition, Defendants argue that any grievances Plaintiff filed before the attack do not constitute exhaustion. (*Id.* at 8). Finally, they argue that Plaintiff is not excused from the exhaustion requirement. (*Id.* at 8-9). Plaintiffs also filed a *Rand* warning with their motion for summary judgment. (ECF No. 50-1).

Plaintiff filed an opposition on March 4, 2021. (ECF No. 57). Plaintiff argues that he filed reasonable accommodation requests for a single cell before he was attacked. (*Id.* at 2). He also argues that, with respect to his reasonable accommodation request he filed after his attack, exhaustion was not available because he would have been labeled a snitch if he received a favorable outcome. Finally, he argues that he filed another appeal that constituted exhaustion. He did not attach the referenced appeal.[1]

///

---

[1] In their reply brief, Defendants argue that Plaintiff labeled a portion of his opposition a "Declaration" but never signed it under perjury and, as such, Plaintiff's opposition does not provide competent summary-judgment evidence. (ECF No. 58 at 2). Plaintiff signed the final page of the body of his opposition. (ECF No. 57 at 10). In the first paragraph of his opposition, Plaintiff states that "Plaintiff hereby swears under penalty of perjury pursuant to California law, that the foregoing is true." (*Id.* at 1). Given Plaintiff's *pro se* status and that he is the non-moving party, the Court will evaluate the statements Plaintiff made in his declaration as evidence. *See Kersting v. United States*, 865 F. Supp. 669, 676 (D. Haw. 1994) ("As long as an unsworn declaration contains the phrase 'under penalty of perjury' and states that the document is true, the verification requirements of 28 U.S.C. § 1746 are satisfied.").

**V.    ANALYSIS**

    **A.    Availability and Plaintiff's Use of Administrative Remedies**

Defendants argue that administrative remedies were available but that Plaintiff did not exhaust his claims as to Defendant Smith. "Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Reyes*, 810 F.3d at 659. As discussed above, Defendants carry "the ultimate burden of proof" to show Plaintiff failed to exhaust his administrative remedies. *Albino*, 747 F.3d at 1166. However, if Defendants show that a remedy was available and that Plaintiff did not exhaust it, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.

        1.    <u>Administrative Appeal System</u>

First, Defendants argue that there was an administrative appeals process at SATF, which was available to Plaintiff. (ECF No. 50-2 at 3). Defendants point out that Plaintiff used the grievance process in the relevant timeframe, and this is undisputed. (*See* ECF No. 1 at 5-29) (in Plaintiff's verified complaint, attaching various grievances and institutional responses, including a third-level response). Defendants also attach a declaration from J. Zamora, appeals coordinator at SATF, which explains the three-level system of exhaustion. (ECF No. 50-4 at 3-4). Thus, Defendants have carried their initial burden that there was an available administrative system.

        2.    <u>Plaintiff's Appeals</u>

Defendants next argue that Plaintiff did not exhaust his administrative remedies. (ECF No. 50-2 at 4, 6-8).

Plaintiff states he arrived at SATF on December 2016 and he was attacked on January 24, 2019. (ECF No. 1 at 3-4). He filed his complaint on May 21, 2019. According to the declaration of Howard E. Moseley, Associate Director of the Office of Appeals of the California Department of Corrections and Rehabilitation, Plaintiff did not file any third-level appeals for non-healthcare issues between December 2016 and May 21, 2019. (ECF No. 50-5 at 1-2, 5). Thus, in no event did Plaintiff appeal a non-healthcare matter—including SATF-C-17-05050 or SATF-C-19-01867,

discussed *infra*—to the third level. Thus, for summary judgment purposes, Defendants, as the moving party, have met their initial burden to "show[] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

However, Plaintiff argues he exhausted Appeal Log HC-19001205:

> Plaintiff did exhaust appeal Log # HC 19001205 which is also the basis of this lawsuit and speaks to a general grievance on plaintiff's treatment and living conditions regarding his keratoconus at the time of the filing of this suit Plaintiff was without proper contact lenses and thus severly visually impaired shortly after being seriously injured in a cell assault as Plaintiff warned was a risk in BOTH his reasonable accommodation request.

(ECF No. 57 at 8-9) (as in original).

Neither Plaintiff nor Defendant originally attached a copy of the appeal. However, pursuant to an order (ECF No. 61), Defendants filed a copy of the appeal on April 7, 2021, (ECF No. 62). Plaintiff signed that appeal on August 11, 2019—about three months after he filed suit. (*Id.* at p. 9). Plaintiff received a response from Headquarters on January 23, 2020, which stated "[t]his decision exhausts your administrative remedies." (*Id.* at p. 8). Thus, this appeal was not exhausted until eight months after he filed this lawsuit.

Therefore, this appeal does not aid Plaintiff's exhaustion argument because he did not exhaust the appeal *before* he filed the complaint. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (favorably citing cases holding that "§ 1997e(a) requires exhaustion before the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation").

Moreover, this health care grievance complains about the failure to receive Plaintiff's hybrid contact lenses. It does not refer to the attack at issue in the complaint. It does not refer to Defendant Smith's failure to protect him. It does not refer to Plaintiff's safety concern regarding the lack of lenses. It thus does not cover the subject matter in Plaintiff's claim against Defendant Smith, i.e., a failure to protect based on denying single cell status despite Plaintiff lacking his contact lenses. (Again, Plaintiff's claim against Defendants C. Cryer, J. Lewis, and S. Gates for deliberate indifference to a serious medical condition is proceeding and is not subject to a challenge for a failure to exhaust administrative remedies.)

9

Accordingly, Defendants established that Plaintiff failed to process a proper grievance to the third level, and Plaintiff failed to create a genuine dispute of material fact to counter Defendants' showing.

### 3. Availability Here

Because Defendants have met their initial burden to show Plaintiff had available remedies and that he did not exhaust them, Plaintiff now has the burden "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Ross*, 136 S. Ct. at 1862 ("The only limit to § 1997e(a)'s [exhaustion] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.' "); *Reyes*, 810 F.3d at 657 ("The California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level."). The Court now turns to whether Plaintiff has come forward with such evidence.

Plaintiff argues that his administrative remedies were unavailable because pursuing them was a dead end and because prison administrators thwarted him. (ECF No. 57 at 5-10). The Supreme Court has provided the following standards concerning dead ends and thwarting:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Ross*, 136 S. Ct. at 1859-60 (citations omitted).

Plaintiff signed a reasonable accommodation request, numbered SATF-C-19-01867, on April 1, 2019, which was marked as received by SATF on April 3, 2019. (ECF No. 50-4 at 10). In it, Plaintiff stated "I cannot see well enough when in my cell to defend myself from attack." (*Id.*). The reasonable accommodation panel's response, which declined to provide the requested accommodation, was stamped April 17, 2019. (*Id.* at 9). According to the declaration of Zamora's

10

declaration, Plaintiff did not appeal that denial. (*Id.* at 1, 5).

The parties agree that Plaintiff was interviewed about his reasonable accommodation request. (*Id.* at 3; ECF No. 50-3 at 4). The parties also agree that at the interview, Plaintiff stated he did not have any safety concerns. (ECF Nos. 57 at 3; 50-3 at 4 ("Plaintiff was interviewed on April 3, 2019, regarding request SATF-C-19-01867, where he stated he does not have any enemy or safety concerns and can safely program on Facility C.")). According to Plaintiff's description of the interview—which Defendants do not contest—the only possible outcomes from the interview were being denied or being labeled a snitch:

> On 04/03/19 I was called to S.A.T.F. Facility program office to be interviewed regarding my reasonable accommodation request . . . In said interview, I was simply asked one question "Do you have safety concerns on the yard?"
>
> I responded, "Only what I said in my request, that I am vu[l]nerable when taking out my contact lenses in the cell," the Sgt clarified "No, I mean are you not safe on the yard? Is anyone threatening to hurt you right now?"
>
> To this I of course responde[d] "No" because for one no individual personal[ly] threatening me and secondly the term "Saf[e]ty Concerns" means only one thing in prison culture / language, and that is that you want to "go S.N.Y." (sensitive needs yard, formally known as protective custody). This was the end of the interview.
>
> Had I (hypothetically said yes) said yes (sic), the interviewing Sgt lik[e]ly would've asked for a name of the individual or individuals whom threatened me. . . .
>
> My expertise, stemming from 18 years of continuous incarceration in CDCR gives me confidence to tell the court that only two responses could've occurred from that point. I either would've been sent back to my assigned cell with no action taken (however the interview would've been documented and more than lik[e]ly seen by inmate workers thus putting my life in danger as I would be labeled a "Snitch"). The second possibility would've been me being removed from the yard. In this instance I would've been placed in a holding take and then moved to Administrative Segregation (the hole) . . . . [M]y cellmate and peers would've been made aware of the happenings in said interview, thus still applying a "Snitch Label" on me and endangering my life. Moreover I still would not have received single cell status.

(ECF No. 57 at 3-4). Plaintiff contends that "the interview was identical in (log # SATF-C-17-05050)," thus indicating that his April 3, 2019 interview was part of "a practice and/or pattern not simply an isolated event." (*Id.* at 3).

11

However, this explanation does not excuse Plaintiff from appealing the denial of his appeal to the third level.  Appealing to the third level did not require him to name an enemy or risk being called a snitch.  Plaintiff provides only a conclusory statement that his appeals would have been denied. (*See* ECF No. 57 at 3-4). But his belief that the appeal would be denied does not excuse the requirement to complete the appeal process.  *See Woodford*, 548 U.S. at 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process.").

Plaintiff's argument that he was thwarted by intimidation is also unavailing. Plaintiff states that the interviewer's only question concerned Plaintiff's safety concerns. Plaintiff's answer was no. (ECF No. 57 at 3-4). Plaintiff argues that had he answered yes untruthfully, he would have been labeled a snitch. But he does not argue that had he appealed the denial, he would have been so labeled. Thus, Plaintiff does not establish that he was thwarted from exhausting his appeals.

### B.     Exceptional Circumstances

Plaintiff argues that exceptional circumstances warrant excusing him from the exhaustion requirement. (ECF No. 57 at 8-9). As discussed in *Ross*, 136 S.Ct. at 1862, there are no "special circumstances" exceptions to the exhaustion requirement. Thus, this argument is unavailing.

## VI.    CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, it is HEREBY RECOMMENDED that:

1) Defendants' motion for summary judgment (ECF No. 50) be GRANTED; and
2) Plaintiff's claims against Defendant Smith be DISMISSED, without prejudice, for failure to exhaust.

///
///
///
///
///
///

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 22, 2021**         /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE