UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM SHARPE,<br><br>    Plaintiff,<br><br>v.<br><br>C. CRYER, et al.,<br><br>    Defendants. | Case No. 1:19-cv-00711-ADA-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT BE DENIED<br><br>(ECF No. 149)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

Plaintiff Adam Sharpe is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This matter is before the Court on Plaintiff's motion for leave to file a proposed second amended complaint adding claims against six defendants. (ECF No. 149). As explained further below, the Court will recommend that Plaintiff's motion be denied.

**I.    BACKGROUND**

Plaintiff filed this case on May 21, 2019. (ECF No. 1). This case proceeds on Plaintiff's claims in his first amended complaint alleging that Defendants C. Cryer, J. Lewis, S. Gates, and C. Nules were deliberately indifferent to his serious medical needs for specialized contact lenses in violation of the Eighth Amendment. (ECF Nos. 141, 143).

1

Subject to an exception not at issue here, non-expert discovery closed on March 8, 2021. (ECF Nos. 32, 98). However, the Court granted Plaintiff leave to file a first amended complaint on April 4, 2023, to add Defendant C. Nules based on Plaintiff's recent discovery that a signature on a healthcare appeal belonged to her rather than Defendant Lewis. (ECF No. 135). While the case was headed to trial, in light of the addition of Defendant Nules, the Court vacated all deadlines and proceedings, *e.g.*, the deadline for the parties to file pretrial statements. (*Id.*).

Plaintiff seeks to amend his complaint to add deliberate-indifference and negligence claims against six defendants: (1) Natural Vision (a medical provider); (2) Aryan Pazirandeh (an optometrist); (3) B. Gerber (a scheduler for Natural Vision); (4) Khaled Tawansy (an ophthalmologist); (5) Adventist Health (a medical provider); and (6) K. Emmart, a registered nurse who worked with Policy and Risk Management Services, Inmate Correspondence and Appeals Branch. (ECF Nos. 149, 153). In support, Plaintiff alleges that Defendants recently provided him with emails between prison staff and outside medical providers, which indicate that the proposed defendants played a role in delaying his medical care from being scheduled.

Defendants oppose leave to amend, arguing that: (1) Plaintiff unduly delayed adding these proposed defendants; (2) leave to amend would be futile; and (3) they would be prejudiced by the resulting delays and litigations costs if leave to amend were granted. (ECF No. 156).

**II.   LEGAL STANDARDS**

Under Rule 15(a), a party may amend a pleading once as a matter of course within twenty-one days of service, or if the pleading is one to which a response is required, twenty-one days after service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Granting or denying leave to amend is in the discretion of the Court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). Leave should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2). "[T]his policy is to be applied with extreme

liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The nonmoving party has the burden of showing that leave to amend should be denied. *Pizana v. SanMedica Int'l LLC*, No. 1:18-CV-00644-DAD-SKO, 2022 WL 1241098, at *9 (E.D. Cal. Apr. 27, 2022).

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir.2004). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "A district court, however, does not abuse its discretion in denying leave to amend where amendment would be futile." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).

**III.   ANALYSIS**

With these standards in mind, Defendants focus on the following factors: undue delay, futility, and prejudice.[1]

Beginning with undue delay, Defendants note that this case has been pending for over four years and that Plaintiff knew the identities of at least some of the proposed defendants long ago. In support, Defendants provide an excerpt from Plaintiff's deposition, taken December 18, 2020, where he generally recalled treatment with Natural Vision, Tawansy, and Pazirandeh. (ECF No. 156-1, pp. 9-11).[2] Moreover, they assert that their motion for summary judgment, filed on May 24, 2021, identified scheduling difficulties suggesting that outside parties were at fault in the delay in Plaintiff obtaining medical treatment. (*See, e.g.*, ECF No. 65-1, p. 17 –

---

[1] As to the other two factors, there is no indication that Plaintiff is acting in bad faith, and as noted above, Plaintiff has already amended his complaint once before.
[2] The Court notes that the doctors' names are spelled differently in the deposition.

"Here, Defendants never denied Plaintiff any treatment. Rather, Plaintiff continuously received appropriate treatment, but he experienced delays being seen by an outside provider due to contracting and scheduling issues, both of which are outside Defendants' control. Plaintiff then encountered further delays in the manufacturing and shipping time for his specialty contacts. Also outside Defendants' control. This was then compounded by additional delays due to Plaintiff's contact fit issues, resulting in him going through various pairs of new contacts. Defendants never denied his requests to see appropriate medical professionals, nor did they deny his requests for new contacts."). They assert that Plaintiff thereafter did not "seek the identities of any of the schedulers for Natural Vision, Dr. Pazirandeh, Adventist Health, and Dr. Tawansy, or seek to subpoena their records at any time during the proceedings. In fact, Plaintiff opposed Defendants' request to subpoena records from Natural Vision." (ECF No. 156, p. 4).

In response, Plaintiff argues that he could not have known about his potential claims until his recent discovery of the emails, which generally concern attempts by prison staff to schedule medical appointments with outside medical providers. (ECF No. 158, pp. 2-5).

The Court recognizes that Plaintiff only recently received the emails at issue between prison staff and outside medical providers. However, a hallmark of conducting discovery is the requirement that a party exercise diligence. *Cf. Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (discussing diligence requirement in seeking discovery to modify a case schedule). The circumstances here are unlike those that led to the Court's prior grant of leave to amend, which was based, in part, on the conclusion that Plaintiff would have had no reasonable way of knowing of Defendant Nules' involvement in his healthcare appeal until her illegible signature (which was featured alongside a typed signature block bearing Defendant Lewis' name) was identified by Defendant Lewis at her deposition. (ECF No. 135, pp. 4-5). Here, as demonstrated by his December 18, 2020 deposition, Plaintiff knew of the existence of at least some of the proposed defendants, as well as their general involvement in his healthcare, based on his own interactions with them. (ECF No. 156-1). Further, Defendants' motion for summary judgment, filed on May 24, 2021, advised Plaintiff about the potential responsibility of outside providers for the delay in his medical care. (*See, e.g.*, ECF No. 65-1, p. 17). Plaintiff

4

has not contested Defendants' assertion that he did not seek the identifies of the outside providers or to subpoena their records. Thus, the Court concludes that the factor of undue delay weighs against Plaintiff.

Defendants also argue that Plaintiff's proposed deliberate indifference claim against Emmart is futile because it is based on a single email where she follows up on Plaintiff's ophthalmology appointment status in order to complete her appeal response.[3] (ECF No. 156, p. 6). The email at issue states as follows: "No worries, the appeal is not due for a while, but the Ophthalmology is due now. I did wait a week for a reply before forwarding it last night. Maybe it got lost in the daily onslaught." (ECF No. 149, p. 57). Noting that the proposed second amended complaint (ECF No. 153, p. 9) offers no facts as to Emmart's alleged wrongdoing, besides recounting this email, Defendants argue that Plaintiff cannot state a claim for deliberate indifference to his serious medical needs. (ECF No. 156, p. 7).

Plaintiff does not contest the lack of supporting facts in his proposed second amended complaint, but argues that the context of this email, when compared with others, is sufficient to state a claim. (ECF No. 158, p. 7).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires a plaintiff to show (1) "a 'serious medical

---

[3] Defendants also argued that Plaintiff's medical negligence claims against them would be barred for failure to plead compliance with the requirement in that Government Claims Act that a person first present his claim to the California Victim Compensation and Government Claims Board before he may file an action for damages against a California governmental entity or employee for injury to his person. (ECF No. 156, p. 4). However, Plaintiff indicates in his reply that his claims for medical negligence are not against the current defendants but only against "the outside providers and scheduler." (ECF No. 158, p. 6). Thus, the Court will not address this argument.

need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)). "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Delay in medical treatment generally only constitutes deliberate indifference if it causes further harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Here, Plaintiff offers no facts—besides reciting Emmart's email—to show that she was deliberately indifferent to his serious medical needs. The lack of supporting facts is itself sufficient to state a claim. Moreover, the content of the email itself, even when read in context with other emails, seems to indicate an attempt to follow-up on an ophthalmology appointment for Plaintiff, which would tend to disprove a deliberate indifference claim. Thus, the Court concludes that leave to amend would be futile as to this claim.

Turning to prejudice, Defendants note that the case was about to be set for trial before Defendant Nules was added, and although this case will involve further litigation now that she is a defendant, the claim against her is very similar to that against Lewis. They argue that adding negligence claims against five non-CDCR defendants and one CDCR defendant would require extensive additional litigation in this case that has already been pending for over four years. More specifically, they state as follows:

> In addition to defending against discovery served on Nules, Defendants Cryer, Gates and Lewis will now have to defend additional discovery and will likely need to re-depose Plaintiff based on the new claim and new Defendants. Defendants will be forced to answer, re-open discovery, and file a case dispositive motion for the new parties. This will add additional litigation costs and delay the action for a substantial period of time. This is of particular issue here because of Defendant Lewis' uncertain health.

(ECF No. 156, p. 8).

Plaintiff argues that there will be no prejudice given the recent addition of Nules; that most of the proposed defendants are separate from the CDCR, and thus would not be represented by defense counsel so as to add to Defendants' litigation workload; and the addition of the proposed defendants may offer the existing Defendants an opportunity to strengthen their own case by deflecting blame. (ECF No. 158, p. 8).

Upon review, the Court finds that Defendants would be prejudiced were Plaintiff granted leave to amend his complaint a second time. While there will be further litigation with the addition of Nules, as Defendants point out, much of that will relate to the same factual issues concerning Lewis. Further, the issue of whether the appeal is sufficient to establish deliberate indifference has already been addressed at screening as to Nules, and at the summary judgment stage as to Lewis. (ECF Nos. 71, 79, 143).

Here, the proposed defendants had differing roles in the treatment process—they did not process healthcare appeals; rather, the non-CDCR defendants were treatment providers (and a scheduler working with a treatment provider).[4] Thus, the claims against them generally involve different facts and legal claims (*i.e.*, negligence). Additionally, the Court notes that, to the extent that Plaintiff attempts to bring deliberate indifference claims against the non-CDCR defendants, there would be an issue as to what extent they were acting under color of state law as required by § 1983.

Permitting the addition of six additional defendants involving different facts and legal issues would substantially delay this case that has already been pending for over four years. Defendants have established specific prejudice from the resulting delay and costs associated with such litigation, and thus this factor weighs against granting leave to amend.

### IV. CONCLUSION AND RECOMMENDATIONS

Because the factors addressed above all weigh in favor of denying Plaintiff's motion for leave to amend, IT IS RECOMMENDED that Plaintiff's motion for leave to amend (ECF No. 149) be denied.

---

[4] As to Emmart, the Court reiterates its discussion above noting that Plaintiff fails to state a deliberate indifference claim against her.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 18, 2023**          /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE