UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM SHARPE,<br><br>        Plaintiff,<br><br>v.<br><br>C. CRYER, et al.,<br><br>        Defendants. | No. 1:19-cv-00711-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT NULES' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 173)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

**I.  INTRODUCTION**

Plaintiff Adam Sharpe is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's claims that Defendants C. Cryer, J. Lewis, S. Gates, and C. Nules were deliberately indifferent to his serious medical needs for specialized contact lenses in violation of the Eighth Amendment. (ECF Nos. 141, 143).

On May 30, 2024, Nules filed a motion for summary judgment, arguing that she is entitled to summary judgment because her staff worked diligently to schedule Plaintiff medical care and the delays encountered were outside her control and thus she was not deliberately indifferent to Plaintiff's need for contact lenses. (ECF No. 173).

Plaintiff filed his opposition on June 13, 2024, and Nules filed her reply on July 10, 2024. (ECF Nos. 177, 181).

As explained below, the Court recommends granting the motion for summary judgment.

1

## II.     BACKGROUND

Plaintiff filed this case in May 2019, and it has been heavily litigated since then. Defendants Cryer, Gates, and Lewis previously moved for summary judgment, arguing that, because they were only involved in Plaintiff's appeals for medical care at the administrative level, lacked medical training or the authority to obtain medical care for him, and never denied him care, they could not be considered deliberately indifferent to his serious medical needs. (ECF No. 65). The Court recommended denying their motion for summary judgment because there was a genuine issue of material fact as to whether Defendants could have taken any steps to ensure that Plaintiff's medical treatment was not unnecessarily delayed, *e.g.*, by directing staff workers to follow up on the status of Plaintiff's medical care. (ECF No. 71). The formerly assigned District Judge adopted the findings and recommendations and denied Defendants' motion for summary judgment. (ECF No. 79).

Later, the Court permitted Plaintiff to file an amended complaint adding Nules as a defendant based on Plaintiff's discovery that a signature on a healthcare appeal belonged to her. (ECF No. 135).

The amended complaint alleges that Plaintiff suffers from keratoconus, an eye disease that deteriorates his vision. (ECF No. 141, p. 3). Accordingly, he has been prescribed SynergEyes Hybrid Contact Lenses. (*Id.*). Without the contact lenses, Plaintiff's natural vision is 20/200 in the left eye and 20/400 in the right eye. (*Id.*). The lenses are to be replaced every 6 months. (*Id.*). Plaintiff received lenses on October 4, 2016, at Kern Valley State Prison. (*Id.*). Plaintiff then transferred to Substance Abuse Treatment Facility (SATF) in December of 2016. (*Id.*). Plaintiff let SATF medical know that Plaintiff's lenses would need to be replaced in April 2017. (*Id.*).

Plaintiff was informed that he would be referred to see an ophthalmologist for a lens fitting.  (*Id.*). After he did not see an ophthalmologist, he filed a healthcare appeal (SATF HC-17065076) concerning his need for vision care. (*Id.* at 3-4). Plaintiff saw an ophthalmologist on June 4, 2018, who recommended that his lenses be replaced. (*Id.* at 4). After failing to receive his lenses, he filed another healthcare appeal (SATF HC-18001512). (*Id.*). On January 14, 2019, Plaintiff still had not received his lenses and was assaulted by a cellmate. (*Id.*). In June 2020, Plaintiff finally received well-fitting lenses. (*Id.* at 5).

Plaintiff's first healthcare appeal (SATF HC-17065076) had Nules' signature on it even though it indicated that it was authored by Defendant Lewis.

After screening the amended complaint and allowing Plaintiff's current claims to proceed, the Court reopened discovery as to Nules and permitted the parties to file dispositive motions. (ECF Nos. 143, 160). Nules now moves for summary judgment, which motion has been fully briefed and is thus ripe for consideration. (ECF Nos. 173, 177, 181).

### III.     SUMMARY OF THE PARTIES' ARGUMENTS

Nules argues that she is entitled to summary judgment because her staff worked diligently to schedule Plaintiff medical care and the delays she encountered were outside her control.[1] (ECF No. 173). In support of her motion, Nules attaches the following: (1) declarations (including her own) from various persons involved with Plaintiff's healthcare; (2) emails regarding attempts to schedule Plaintiff medical care; (3) deposition transcripts, including that of Plaintiff's expert, Dr. Johnathan Macy; (4) healthcare appeal documents; (5) a document reporting Plaintiff's movements throughout the prison system; (6) and medical records.

Plaintiff argues that whether Nules directly caused further delays is irrelevant because her liability stems from her "failure to take any action when repeatedly told that the directions of medical providers were not being followed." (ECF No. 177, p. 11). In support of his motion, Plaintiff mainly provides documents already in the record, *e.g.*, Nules' declaration and this Court's findings and recommendations on the prior motion for summary judgment filed by Defendants Cryer, Lewis, and Gates. He also provides the purported instructions for his contact lenses.[2]

Nules' reply argues that Plaintiff has failed to submit evidence creating a genuine issue of material fact and reiterates her arguments for granting summary judgment. (ECF No. 181).

---

[1] Nules raises other arguments too, including that she is entitled to qualified immunity. Because the Court otherwise recommends granting Nules summary judgment, it will not address her additional arguments.

[2] Nules argues that the lens instruction sheet lacks foundation and is illegible and the Court's prior findings and recommendations are irrelevant because they applied to different Defendants. (ECF No. 181, pp. 3-4). Nules asks the Court to strike these documents and to not consider them in ruling on this motion. The Court need not resolve this issue. As explained below, even considering the lens instruction sheet, which is sufficiently legible for purposes of this motion, Nules is entitled to summary judgment. Moreover, Plaintiff does not appear to offer the Court's prior findings and recommendations as *evidence* in support of his case; rather, he offers them to support his legal argument.

## IV. UNDISPUTED FACTS

The parties have provided statements of undisputed facts as required by Local Rule 260(b).[3] The Court finds the following facts material and undisputed for purposes of summary judgment. (*See* ECF Nos. 173-2, pp. 2-18 (Nules' list of 119 undisputed facts), ECF No. 117, pp. 3-8 (Plaintiff's statement disputing facts 5, 6, 8, 10, 12, 13, 26, 28, 29, 52, 76, 82, 83, 84, 85, 87, 110, 113, 117)).

Plaintiff is a prisoner who was housed at SATF for most of the events at issue in the amended complaint. Plaintiff received new contact lenses on October 4, 2016, and was transferred to SATF on December 20, 2016.

On April 27, 2017, Plaintiff's primary care physician referred him to see ophthalmology, Dr. Tawansy, which referral was approved, and the primary care physician updated Plaintiff's contact lens solution prescription. Plaintiff's medical appointment was categorized as routine, which meant it had a 90-day compliance period. Later, it was discovered that, for unstated reasons, SATF pharmacy did not receive Plaintiff's updated prescription.

SATF received Plaintiff's healthcare appeal (SATF HC-17065076) on June 14, 2017, stating that he needed to see an ophthalmologist to have his lenses replaced and to have his lens solution prescription refilled. The next day, RN Carrasquillo addressed the appeal by contacting SATF pharmacy to remedy the issue with Plaintiff's lens solution. But by this time, the issue had already been corrected and the proper prescription request had been approved through June 2018.

On July 26, 2017, the 90-day compliance period (which was set on April 27, 2017) to have Plaintiff seen by an ophthalmologist expired with no appointment scheduled for Plaintiff. RN Carrasquillo interviewed Plaintiff regarding his healthcare appeal on August 4, 2017. And on

---

[3] Nules argues that her motion for summary judgment should be granted because Plaintiff's statement does not fully comply with Local Rule 260, *e.g.*, because Plaintiff failed to reproduce all of her itemized facts. (ECF No. 181, p. 2). However, Nules is not entitled to summary judgment on this basis. Plaintiff has materially complied with the Rule's requirements—he specifically lists the facts he disputes and provides reasons why he disputes them. (ECF No. 177, pp. 3-8). The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Moreover, Nules, as the moving party, still "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

this same date, an offsite scheduler, K. Sawtelle emailed Vargas[4] to schedule Plaintiff's six-month follow up with Dr. Tawansy. This appointment was eventually scheduled for August 23, 2017, and was pending when RN Carrasquillo completed her review of Plaintiff's healthcare appeal. However, the day before Plaintiff's appointment, Plaintiff was transported to California Men's Colony to serve time in administrative segregation after he was involved in a riot at SATF. While the parties dispute who is ultimately to blame, there is no dispute that Plaintiff's transfer to California Men's Colony caused him to miss his appointment with Dr. Tawansy.[5]

On September 11, 2017, Plaintiff saw an optometrist, Dr. Chaffe, and the headquarters level received Plaintiff's healthcare appeal. Plaintiff returned to SATF on September 18, 2017.

On October 5, 2017, RN Emmart from headquarters contacted RN Carrasquillo at SATF regarding Plaintiff's lens solution and ophthalmology appointment. For approximately the next month and ten days, RN Emmart and RN Carrasquillo corresponded about getting Plaintiff scheduled with ophthalmology, but there were various delays. First, RN Carrasquillo delayed responding to RN Emmart until October 12, 2017, due to being out of the office various days due to a personal matter involving a sick family member. Second, although Plaintiff saw his primary care physician on October 20, 2017, who referred him to be seen by an ophthalmologist for new contact lenses, there was a computer issue that prevented the ophthalmologist appointment from being scheduled. RN Emmart and RN Carrasquillo (among others) worked on this issue, which eventually resolved around November 15, 2017, when Plaintiff's referral to ophthalmology was again approved with a 90-day compliance date.[6]

Thereafter, the offsite scheduler tried to schedule Plaintiff an appointment with Dr. Tawansy, but Dr. Tawansy's office would often not return emails, phone calls, and various attempts to schedule patients went unanswered. This issue resulted in Dr. Tawansy being removed as an approved CDCR provider just months later.

---

[4] It appears from the context of the record that Vargas is a person responsible for scheduling medical appointments with Dr. Tawansy's office.

[5] Nules generally asserts that it is ultimately the receiving institution's responsibility to make sure a transferred inmate keeps an existing appointment or to reschedule the appointment. Plaintiff asserts that SATF has the ability to intervene to make sure an appointment is kept.

[6] Nules states that the referral issue may have persisted during this time period because the off-site scheduler was unfamiliar with the proper "request for" and "referral to" terms used in the computer system.

Specifically, on November 20, 2017, the offsite scheduler sent an email to Vargas to attempt to schedule Plaintiff's appointment with Dr. Tawansy. On December 7, 2017, the offsite scheduler sent another email to Vargas to try to schedule Plaintiff an appointment.

On December 28, 2017, Nules signed the headquarters' level decision, noting the following regarding Plaintiff's healthcare since filing the healthcare appeal in June 2017:

> On September 11, 2017, you were seen and evaluated by an optometrist. The optometrist noted that your lenses were in good condition and that there was no corneal or conjunctival inflammation.
>
> On October 20, 2017, you were seen and evaluated by a primary care provider. The provider reviewed your diagnosis of keratoconus and noted that you would be referred for new contact lenses.
>
>> Documentation indicates a referral to ophthalmology was approved on November 15, 2017, and is currently pending scheduling. If the appointment does not take place within the time frames outlined in Inmate Medical Services Policies and Procedures, Volume 4, Chapter 8, you may submit a CDC 7362, Health Care Services Request Form, to discuss your concern with health care staff.
>
> You continue to be enrolled in the Chronic Care Program, and primary care provider follow-up is pending scheduling for the ongoing evaluation of your chronic health care concerns. Review of your pharmacy profile indicates you [] have an active order for contact lens solution.

Nules determined that "no intervention at the Headquarters' Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary."

This was Nules' only involvement with Plaintiff's healthcare, she never met or interviewed him, and she left her position in March 2018. After Nules' involvement in Plaintiff's appeal ended in December 2017, Plaintiff experienced considerable further delays in getting his lenses, which were the subject of an additional healthcare appeal that was addressed by other defendants in this case, as discussed further in the findings and recommendations on the defendants' prior motion for summary judgment. (ECF No. 71).

Sometime between February and June 2020, Natural Vision was finally able to find a set of lenses that properly fit Plaintiff, which was approximately two-and-a-half years after Nules signed the healthcare appeal (SATF HC-17065076) at issue in the present motion for summary judgment.

### V. LEGAL STANDARDS

#### A. Motion for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)). "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

### VI. ANALYSIS

#### A. Nules' Position

In light of the above legal standards and undisputed facts, the Court now considers Nules' motion for summary judgment. In arguing that she was not deliberately indifferent to Plaintiff's serious medical needs, Nules relies on the undisputed facts summarized above, asserting that the delays she encountered were outside her control and that her staff worked diligently to schedule

1  Plaintiff's medical care.

2  Among other things, she notes that staff scheduled Plaintiff for an appointment with Dr.
3  Tawansy on August 23, 2017, but this appointment was cancelled due to Plaintiff's transfer
4  California Men's Colony to serve time in administrative segregation. While there were some
5  delays that appear attributable to prison officials, such as RN Carrasquillo not responding to
6  emails for one week due to personal issues, Nules points out the numerous instances of staff
7  working to obtain Plaintiff medical care.

8  For example, Plaintiff saw an optometrist on September 11, 2017, who determined that
Plaintiff's lenses were in good working condition.[7] After Plaintiff returned to SATF on
9  September 18, 2017, staff took multiple steps in trying to schedule Plaintiff an ophthalmology
10 appointment. Notably, from October to December, staff worked to schedule Plaintiff an
11 appointment with his primary care physician; Plaintiff saw his primary care physician on October
12 20, 2017, who referred him to an ophthalmologist for new contact lenses; staff resolved a
13 computer issue that had prevented Plaintiff from being scheduled, and staff reached out to Dr.
14 Tawansy's office to schedule the appointment.

15 In short, the undisputed evidence shows that, by at the time Nules signed Plaintiff's
16 healthcare appeal in December 2017, staff had resolved prior issues that prevented Plaintiff from
17 getting his lenses and staff was actively working on scheduling him an appointment with the
18 doctor that was currently working as SATF's outside provider.

19 **B. Plaintiff's Position**

20 Plaintiff does not dispute the material facts recited above; rather, he argues that whether
21 Nules directly caused further delays is irrelevant because her liability stems from her failure to act
22 despite knowing of delays in him receiving healthcare. And citing the previous findings and
23 recommendations, he asserts that Nules is liable because she failed "to take any action when
24 repeatedly told that the directions of medical providers were not being followed." (ECF No. 177,
25 p. 11).

26 Ultimately, the Court finds these arguments unconvincing. True, Plaintiff's claim against

27
---
[7] Plaintiff disputes that his lenses were in good working condition because they were more than six months
28 old. He also contends that his lenses were not working correctly and a doctor had prescribed new lenses.

9

Nules is premised on an alleged failure to intervene to provide him medical treatment in the face of delay—not that she herself caused the multiple delays leading to his inability to obtain properly fitting lenses. However, based on the undisputed facts, Plaintiff has not presented evidence to support his contention that Nules failed to take any action and was thus deliberately indifferent to his medical needs.

On this issue, it is important to point out that the relevant timeframe as to Nules is relatively short—it spans from October 4, 2016, when Plaintiff received new contact lenses, to December 28, 2017, when Nules signed Plaintiff's appeal and had no further involvement in his medical care. And accepting as true Plaintiff's contention that his lenses must be replaced every six months,[8] the critical timeframe is even more narrow—Plaintiff's lenses would have expired around April 2017, he filed his healthcare appeal in June 2017, and Nules signed the appeal at issue in this motion approximately six months later. The majority of the delays in Plaintiff receiving his contact lenses—post December 2017 up to June 2020—involve the other Defendants in the case, not Nules.

With this in mind, the record shows during the relevant timeframe that Nules' staff directly intervened to try to schedule Plaintiff's medical care. Notably, following Plaintiff's June 2017 healthcare appeal, RN Carrasquillo started working on the appeal the next day. Further, staff successfully scheduled Plaintiff an ophthalmology appointment for August 23, 2017. Although Plaintiff did not attend this appointment due to his transfer to California Men's Colony, he received medical care a short time later via an optometrist appointment on September 11, 2017, a week before he returned to SATF.

And in the remaining timeframe until Nules signed Plaintiff's appeal, prison staff secured Plaintiff an appointment with his primary care physician on October 20, 2017, with a referral to ophthalmology; prison staff resolved computer issues that had prevented the referral; and staff contacted Dr. Tawansy's office in late November 2017, with a follow-up in early December 2017, to schedule the appointment. This evidence disproves Plaintiff's claim that Nules was ignoring medical advice during the relevant timeframe. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667-68 (9th Cir. 2021) (noting that a prison official is liable for deliberate indifference to a

---

[8] The Court accepts this assertion only for the purposes of resolving this motion for summary judgment.

10

prison's serious medical needs only if the prison official was both (1) aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and (2) the prison official actually drew the inference).

In light of this undisputed facts, no reasonably jury could conclude that Nules acted with deliberate indifference by failing to take action to secure Plaintiff's medical care during the limited timeframe at issue. Accordingly, Nules is entitled to summary judgment.

## VII. CONCLUSION AND RECOMMENDATIONS

For the above reasons, there is not a genuine dispute of material fact and Defendant Nules is entitled to judgment as a matter of law.

Accordingly, IT IS RECOMMENDED that Defendant Nules' motion for summary judgment (ECF No. 173) be granted and that the Clerk of Court be directed to terminate Nules as a Defendant on the docket.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 9, 2024**          /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

11